**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alfred Albano, et al., | No. CV-07-2359-PHX-SMM |
| Plaintiffs, | No. CV-08-505-PHX-SMM (consolidated) |
| vs. | **ORDER** |
| Shea Homes Limited Partnership, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Renewed Motion for Attorney's Fees and their Motion for Sanctions. (Docs. 103, 104.) The Court will grant both motions.

## BACKGROUND

The relevant background facts underlying Defendants' motion for attorney's fees will be set forth and discussed in the Court's analysis of that motion. However, in order to acquire a proper understanding of the factual basis for Defendants' motion for sanctions, the Court will thoroughly review the procedural history of this consolidated action. Accordingly, the Court will republish a previously issued Order which detailed the relevant factual background and procedural history of this case, as follows:[1]

> The cases consolidated before the Court represent the third and fourth lawsuits alleging construction defects in homes owned by Plaintiffs in a community located in Gilbert, Arizona known as Carriage Lane. The first

---

[1] In the Background section of this Order, "Dkt." refers to documents in the lead case, CV-07-2359-PHX-SMM. "[Doc.]" refers to documents in the consolidated case, CV-08-505-PHX-SMM.

case, captioned Mark Hoffman, et al. v. Shea Homes Limited Partnership, et al., CV2003-011388 ("Hoffman"), was filed in superior court in June 2003. Hoffman was a purported class action, but the plaintiffs did not move for class certification until November 2005, nearly 30 months after filing the complaint. On February 24, 2006, the superior court denied the motion for class certification as untimely and on the merits, and denied Plaintiffs' motion to amend the complaint as untimely and prejudicial. (Dkt. 7, Defs.' Statement of Facts ("DSOF") ¶ 7.) The court found Plaintiffs' explanation for their delay in seeking class certification "unpersuasive and, essentially, undocumented." (Id., Ex. E at 3.) The three named Plaintiffs in Hoffman subsequently settled.

On March 1, 2006, Plaintiffs' counsel caused a Notice and Opportunity to Repair ("NOR") to be served on Defendant Shea Homes Limited Partnership. (DSOF ¶ 9.) Plaintiffs then filed a second action in Superior Court, Albano, et al. v. Shea Homes Limited Partnership, CV2006-00812 ("Albano I"), which was dismissed for failure to comply with the requirements of the Arizona Purchaser Dwelling Act, A.R.S. § 12-1361 et seq. ("PDA"). The superior court found that certain plaintiffs in Albano I had not provided NORs or had not permitted inspection of their homes. (DSOF, Ex. H at 2-3.) The court further found that the remaining plaintiffs had not responded to defendants' initial offer to repair and thus failed to comply with the PDA. (Id. at 3-4.) The court therefore granted defendants' motion to dismiss Albano I.

Upon receipt of the court's ruling in Albano I, Plaintiffs sent additional NORs to Defendant Shea Homes Limited Partnership ("Shea") pursuant to the PDA. Plaintiffs then commenced a third action in superior court, Albano, et al. v. Shea Homes Limited Partnership, CV2007-020525 ("Albano II" or "Lead Case"). Albano II was filed on November 5, 2007, and removed to federal court on the basis of diversity jurisdiction on November 28, 2007, case number CV-07-2359. (Albano II, Dkt. 1.) Shortly thereafter, Defendants filed the Motion to Strike and Motion for Summary Judgment currently before the Court. (Dkts. 5, 6.) Plaintiffs then filed the first of several motions to remand Albano II to superior court. (Dkt. 9; see also Dkts. 19, 23, 44, 47.)

Plaintiffs did not respond to the Motion for Summary Judgment within the responsive deadline. Defendants therefore filed a Motion for Summary Disposition, based on Plaintiffs' failure to respond and the Federal and Local Rules of Civil Procedure. (Dkt. 12.) Plaintiffs mistakenly interpreted that motion as an order and entry of judgment, and filed a Motion to Set Aside Judgment. (Dkt. 16.) The Court[1] clarified that "[a] judgment has not been entered in this matter. The motion [to set aside] will be denied as moot." (Dkt. 21, Order dated Jan. 31, 2008.) The Court granted Plaintiffs 30 days to respond to the Motion for Summary Judgment. (Id.)

[1]At the time, Albano II was assigned to Judge Carroll. Albano II was subsequently reassigned by random lot to the undersigned. (Dkt. 38, Order dated Apr. 14, 2008.)

On or about the same day as the Order granting Plaintiffs 30 days to respond to the Motion for Summary Judgment in Albano II, Plaintiffs filed yet another action in superior court, this time naming as the sole defendant Shea Homes Arizona Limited Partnership ("SHAZLP"). Albano et al. v. Shea Homes Arizona Limited Partnership, CV2008-002357 ("Albano III"). SHAZLP filed a voluntary appearance in superior court and removed Albano III to federal court on diversity grounds, case number CV-08-505. Defendants

filed a Motion for Summary Judgment substantively identical to that filed in Albano II. (Albano III, [Doc.] 6.) Plaintiffs subsequently filed a Voluntary Motion to Dismiss Albano III, stating that it was only filed as a "belt and suspenders" approach because Plaintiffs' counsel mistakenly believed that Albano II had been dismissed. ([Doc.] 10.) Defendant SHAZLP responded that it did not oppose dismissal, but requested its costs and attorney's fees incurred in responding to the Albano III complaint. ([Doc.] 11.) Plaintiffs' reply recharacterized Albano III as being filed because the Court "had granted the defendants in [Albano II] summary judgment" but subsequently "set aside the above-mentioned summary judgment."[2] ([Doc.] 12.) Plaintiffs also filed a motion to remand Albano III to superior court, alleging lack of total diversity ([Doc.] 13), and a response to Defendant SHAZLP's Motion for Summary Judgment (Albano II, Dkt. 39).[3]

> [2] Plaintiffs' reply was accompanied by an affidavit from Plaintiffs counsel, in which counsel declared that summary judgment had been "granted" in Albano II and later "set aside." ([Doc. 12], Ex. A, Aff. of Robert Barry ¶¶ 5-6, 8-9.) This misrepresentation of the record in Albano II has been a consistent theme throughout Plaintiffs' filings. (E.g., Albano II, Dkt. 39, Pls.' Resp. at 8:7-10; Albano II, Dkt. 40, Pls.' Statement of Facts ("PSOF") ¶¶ 11, 18; Albano III, [Doc.] 13, Pls.' Mot. to Remand 3:1-4, 15-19.) Given the clarity of Judge Carroll's Order ("A judgment has not been entered in this matter. The motion will be denied as moot."), the Court views these repeated misrepresentations as inexcusable.

> [3] Plaintiffs filed their response to the Albano III Motion for Summary Judgment after the two cases were consolidated, and thus the response appears in the Albano II docket report. Unless otherwise noted, all future citations to the docket report will refer to Albano II, the lead case.

Meanwhile, the docket in Albano II was burgeoning. On the same day as Plaintiffs' Motion to Set Aside the "judgment" allegedly entered therein, Plaintiffs filed a motion to amend the complaint to name SHAZLP as a defendant, voluntarily dismiss the remaining defendants, and remand to superior court. (Albano II, Dkt. 18.) One day later, Plaintiffs filed an amended motion to amend, dismiss, and remand. (Dkt. 19.) Plaintiffs then filed a third motion to amend the complaint, this time to add as plaintiffs persons named in Albano I but omitted from Albano II. (Dkt. 23.) Plaintiffs responded to Defendants' Albano II Motion for Summary Judgment with a one-paragraph response stating that Defendants' motion was "moot" because Plaintiffs had agreed to [] voluntarily dismiss the remaining Defendants and proceed only against Defendant SHAZLP. (Dkt. 26.) None of Plaintiffs' motions to amend and dismiss had been granted.

Albano II and Albano III were subsequently consolidated and reassigned to this Court. (Albano II, Dkt. 35; Albano III, [Doc.] 20.) Given the tangle of overlapping motions, the Court struck Plaintiffs' motions to amend, dismiss, and remand and permitted Plaintiffs to file a single motion for the Court's review. (Albano II, Dkt. 44, Order dated May 1, 2008.) Plaintiffs then filed a single motion to remand which was denied.[4] (Dkt. 53, Order dated July 25, 2008.) A hearing was held to determine an efficient course for resolving the pending motions for summary judgment. The parties agreed that the issues presented in the Albano II and Albano III motions were

> substantively identical and could be resolved by a single order that took into account Plaintiffs' substantive response submitted in Albano III. The parties also agreed to submit, and did submit, a stipulation regarding dates on which Plaintiffs' homes were completed, for the Court's use in determining when the statute of repose began running. (Dkt. 55, Joint Stipulation.)
>
> [4]Plaintiffs' Motion to Remand was premised on the erroneous position that, for diversity purposes, citizenship of limited partnerships is determined by the same criteria as those used for determining the citizenship of corporations. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990). Plaintiffs did not seek to amend the complaint.

(Doc. 56 at 1-5.)

Subsequently, the Court granted Defendants' motion for summary judgment finding that the rule of American Pipe & Const. Co. v. Utah, 414 U.S. 538 (1974), did not toll the time between the filing of the initial class action and the denial of the certification motion and therefore, the plaintiffs' claims were barred by Arizona's eight-year statute of repose, A.R.S. § 12-552. (Doc. 56 at 18-20.) Following the granting of summary judgment to Defendants, Plaintiffs' noticed appeal and Defendants moved for attorney's fees. (Docs. 86, 87.) The Court denied Defendants' motion without prejudice granting them leave to renew the motion following resolution of the appeal. (Doc. 94.)

On appeal, the Ninth Circuit certified the tolling issue to the Supreme Court of Arizona, which determined that the rule of American Pipe did not toll the statute of repose for construction-defect claims. See Albano v. Shea Homes Ltd. P'ship, 227 Ariz. 121, 127, 254 P.3d 360, 366 (2011). After receipt of the Supreme Court of Arizona's answers to the certified questions, the parties agreed that those answers put an end to the litigation in the Ninth Circuit. See Albano v. Shea Homes Ltd. P'ship, 662 F.3d 1120, 1123-24 (9th Cir. 2011). The Ninth Circuit then affirmed this Court's entry of summary judgment in the Defendants' favor. Id.

After the mandate issued, Defendants renewed their motion for attorney's fees in this Court and moved for sanctions against Plaintiffs. (Docs. 103, 104.) As the prevailing party, Defendants also moved for attorney's fees in the Ninth Circuit. (See Albano v. Shea Homes Ltd. P'ship, No. 09-15808, Doc. 70, (9th Cir. Dec. 27, 2011.)  Plaintiffs responded requesting that the Court stay its resolution of Defendants' renewed motion for attorney's

1 fees and sanctions pending Defendants' request for fees in the Ninth Circuit; the Court
2 granted Plaintiffs' motion, in part. (Docs. 116, 134.) Subsequently, the Ninth Circuit
3 determined that Defendants were entitled to attorney's fees under the Arizona Purchaser
4 Dwelling Act ("PDA"), A.R.S. § 12-1364. (See Albano v. Shea Homes Ltd. P'ship, No. 09-
5 15808, Doc. 92, (9th Cir. June 12, 2012).) The Ninth Circuit referred for mediation the
6 amount of reasonable attorney's fees payable to Defendants, which mediation is set for
7 October 29, 2012. (Id., Doc. 97, 9th Cir. August 31, 2012.)

## STANDARD OF REVIEW

Reasonable Attorney's Fees

Arizona substantive law governs the award of fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 n.31 (1975) (stating that a court sitting in diversity must apply the forum state's attorney fee law if it does not conflict with any federal law, and it represents the "substantial policy" of the state); Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007) (stating that in a diversity action, the question of attorney's fees is governed by state law). When the Arizona Court of Appeals has ruled on an issue, but the Arizona Supreme Court has not, the Ninth Circuit will follow the intermediate court's decision unless there is convincing evidence that the state supreme court would decide differently. See Westlands Water Dist. v. Amoco Chem. Co., 953 F.2d 1109, 1111 (9th Cir. 1991).

In Arizona, the trial court has broad discretion in fixing the amount of attorney's fees. Associated Indemnity Corp. v. Warner, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). This discretion is limited only to the extent that "such award may not exceed the amount paid or agreed to be paid." Lacer v. Navajo County, 141 Ariz. 392, 396, 687 P.2d 400, 404 (App.1984). In Arizona, the burden is on the party opposing the fees to show unreasonableness. McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons, 216 Ariz. 266, 271, 165 P.3d 667, 672 (App. 2007). In corporate and commercial litigation between fee-paying clients, the beginning point is the determination of the actual billing rate which the lawyer charged in the particular matter because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular

case. See Schweiger v. China Doll Rest., 138 Ariz. 183, 187–88, 673 P.2d 927, 931–32 (App. 1983). Under Schweiger, a prevailing commercial litigant is entitled to recover a reasonable attorney's fee for services which at the time rendered would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest. S&R Properties v. Maricopa County, 178 Ariz. 491, 505, 875 P.2d 150, 164 (App. 1993). Fees for the services of legal assistants and law clerks are recoverable as attorney's fees because legal assistants and law clerks have legal training and knowledge that can contribute to the attorney's preparation of a legal matter. See Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Bach, 193 Ariz. 401, 403, 973 P.2d 106, 108 (1999).

This Court's Local Rules establish additional guidelines for determining reasonable attorney's fees, including: (A) the time and labor required of counsel; (B) the novelty and difficulty of the questions presented; (C) the skill requisite to perform the legal service properly; (D) the preclusion of other employment by counsel because of the acceptance of the action; (E) the customary fee charged in matters of the type involved; (F) whether the fee contracted between the attorney and the client is fixed or contingent; (G) any time limitations imposed by the client or the circumstances; (H) the amount of money, or the value of the rights, involved, and the results obtained; (I) the experience, reputation and ability of counsel; (J) the "undesirability" of the case; (K) the nature and length of the professional relationship between the attorney and the client; (L) awards in similar actions; and (M) any other matters deemed appropriate under the circumstances. LRCiv 54.2(c)(3).

Section 1927 Sanctions

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. In Fink v. Gomez, 239 F.3d 989, 993 (9th Cir. 2001), the Ninth Circuit determined that recklessness is a sufficient finding for § 1927 liability. However, in In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996), the Ninth Circuit had previously determined that something more than recklessness is required for § 1927 sanctions, namely subjective bad

faith. The Keegan Mgmt. court indicated further that "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." Id. The Ninth Circuit in In re Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010) (further citation and quotation omitted), clarified that "[w]hat is clear from [Ninth Circuit] case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927."

The purpose of § 1927 is to both deter attorney misconduct and to compensate the victims of an attorney's malpractice. Haynes v. City and County of San Francisco, 688 F.3d 984, 987-88 (9th Cir. 2012). Under § 1927, compensation is limited to the additional expenditures incurred by opposing counsel as a result of the multiplicity of the proceedings. New Alaska Development Corp. v. Guetschow, 869 F.2d 1298, 1306 (9th Cir. 1989).

### Inherent Sanction Power

Recklessness is an insufficient basis for sanctions under the district court's inherent power. Instead, counsel's conduct must "constitute[] or [be] tantamount to bad faith." Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980). In sanctioning counsel, "[c]ourts may not invoke [inherent] powers without a 'specific finding of bad faith.'" Yagman v. Republic Ins. Co., 987 F.2d 622, 628 (9th Cir. 1993) (quoting United States v. Stoneberger, 805 F.2d 1391, 1393 (9th Cir. 1986)); accord Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir. 1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power.")

## DISCUSSION

### Reasonable Attorney's Fees

The Ninth Circuit has ruled that Defendants are entitled to attorney's fees as the prevailing party under the PDA, A.R.S. § 12-1364. (See Albano v. Shea Homes Ltd. P'ship, No. 09-15808, Doc. 92, (9th Cir. June 12, 2012).) Therefore, this Court must calculate a

reasonable fee based on the guidelines established by this District's Local Rules. (See LRCiv 54.2(c)(3).)

Regarding the guideline for reasonable time and labor, Defendants have submitted a fee application in the amount of $171,344.00, which includes attorney's fees and related non-taxable expenses. (Doc. 103 at 3, Doc. 106, Doc. 125 at 9-12.) In support of their fee application, Defendants have submitted attorney billing records and the sworn declaration of lead counsel Jill Ann Herman. (Docs. 106-3 thru 106-9, see Doc. 125 at 9 (describing the invoices at issue); Doc. 106-2 (counsel's declaration).) Defendants' invoices establish the amount of fees and expenses they are claiming, totaling $171,344. (Docs. 106-3 thru 106-9, Doc. 125 at 9 (setting forth the fees and expenses claimed).)[2] The billing rates of the attorneys and legal assistants have also been submitted, as follows: Attorneys Jill Ann Herman ($185 hour); Andrea Hewitt ($170 hour); Travis Campbell ($170 hour); Christopher Graham ($175 hour); and Paralegal Assistants L. Truesdale-Vandyke ($85 hour); R. Mercado ($85 hour); Ellen Venable ($90 hour) and Aaron Bushor ($90 hour). Lead Counsel Herman testified that the fee arrangement with Defendants Shea Homes Limited Partnership, J.F. Shea Co., Inc., and Shea Homes Arizona Limited Partnership (collectively "Defendants") concerning attorney's fees and litigation-related expenses provides that Shea is billed for all attorney's fees, out-of-pocket costs, and expenses as they are incurred. (Doc. 106-2 at 3.) Counsel Herman further testified that Defendants have paid, or have been billed, for all fees and costs pursuant to the fee agreement. (Id.)

Plaintiffs object arguing that the amount of fees and expenses being requested is not reasonable. (Doc. 120 at 20-25.) Counsel for Plaintiffs first contends that he has reviewed Defendants's invoices and calculated that 715 hours were spent on substantive pleadings but that those pleadings only totaled 159 pages. According to counsel, this translates into 4.5 hours for each page of substantive legal work, which is unreasonable. (Id.) Defendants

---

[2]The Court notes that Defendants' invoice at Doc. 106-5 was reduced from $18,522 to $9,871, the invoice at Doc. 106-7 was reduced from $14,051.50 to $2,597.50, and the invoice at Doc. 106-9 was reduced from $4,905 to $3,918.

counter that the only reason they spent 715 hours was due to the unreasonable conduct of Plaintiffs' counsel, the repeated and continuous litigation missteps resulting in the number of hours expended in defense. (Doc. 125 at 9.)

In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court determined that where a party has accomplished the result sought in the litigation, fees are to be awarded for time spent even on unsuccessful legal theories. Similarly, in this case, Defendants were required to respond to repeated, continuous and protracted missteps caused by counsel for Plaintiffs, as well as being required on the merits to defend complex statute of repose/equitable tolling arguments in this construction defect case. Under these circumstances, the Court finds that Defendants accomplished the result sought in the litigation and that the number of hours spent were reasonable, even despite the number of pages of work produced through that effort; the amount of hours will not be reduced.

Next, Plaintiffs argue that there is insufficient detail in the time records in order to determine whether the time spent by the attorney was reasonable, whether it was duplicative, improperly split, or whether attorney time should have been assigned to a legal assistant. (Doc. 20 at 21-23.) Defendants have submitted detailed time records describing the action taken, the time spent and who accomplished the work. (Docs. 106-3 thru 106-9.) The fee application process does not require that an applicant "detail how each minute of his time was expended" so long as the general subject matter of time expenditures is identified. See Davis v. City & County of San Francisco, 976 F.2d 1536,1542 (9th Cir. 1992). The Court finds counsels' time records are reasonable, and that they provide sufficient detail for the Court to evaluate time spent on litigation activities. The Court also finds that redaction regarding certain time entries to protect attorney-client privileged communications is proper and does not warrant a fee reduction. See Democratic Party of Washington State v. Reed, 388 F.3d 1281, 1285-86 (9th Cir. 2004) (stating that litigants are "entitled for good reason to considerable secrecy about what went on between client and counsel and among counsel.").

Finally, Plaintiffs assert that counsel for Defendants improperly spent time correcting

1 errors, billing for work done on an underlying state court matter, and billing time for
2 appellate work. (Doc. 20 at 23-24.) The Court agrees with Defendants that ultimately,
3 counsel is responsible for ensuring that submissions are timely and accurately filed. It is
4 reasonable for an attorney to participate in or supervise the filing of Court submissions, and
5 therefore the time spent on these activities is reasonable. Notice of errata are common and
6 constitute a reasonable billing activity. Defendants's time entries evaluating the strength of
7 Plaintiffs' potential appeal before filing and offering a settlement in order to forego an appeal
8 is attorney time reasonably spent. However, Defendants have not responded to Plaintiffs'
9 objection regarding time spent on state court work, and the Court will reduce this time from
10 the amount requested. Thus, Defendants' award of fees and non-taxable expenses is reduced
11 to $171,177.50.

12 The Court has reviewed the other guidelines, namely, the novelty and difficulty of the
13 questions presented; the skill requisite to perform the legal service properly; the preclusion
14 of other employment by counsel because of the acceptance of the action; the customary fee
15 charged in matters of the type involved; whether the fee contracted between the attorney and
16 the client is fixed or contingent; any time limitations imposed by the client or the
17 circumstances; the amount of money, or the value of the rights, involved, and the results
18 obtained; the experience, reputation and ability of counsel; the "undesirability" of the case;
19 the nature and length of the professional relationship between the attorney and the client;
20 awards in similar actions; and other matters deemed appropriate under the circumstances.
21 Counsel for Defendants have submitted its response on each guideline as to why it is entitled
22 to the fees it requested without reduction. (Doc. 106 at 15-17.)

23 The Court finds that the remaining guidelines do not indicate or establish that a
24 reduction in fees is appropriate in this case. Defendants, as the prevailing party, are entitled
25 to attorney's fees and non-taxable expenses in the amount of $171,177.50.

26 Sanctions

27 Next, Defendants move the Court to enter sanctions against Plaintiffs and their
28 counsel for the multiple and repeated frivolous filings and misleading representations to the

- 10 -

1   Court that needlessly expanded the litigation and delayed resolution of the claims against
2   Defendants.  (Doc. 104 at 1-2.)  Defendants argue that because of Plaintiffs' counsels'
3   missteps, Defendants incurred substantial attorney's fees in this protracted litigation, and
4   request that the Court order Plaintiffs' counsel and their law firms jointly and severally
5   responsible for all fees and costs requested by Defendants plus any additional sanction
6   deemed proper by the Court.  (Id.)  Although Defendants initially cited Fed. R. Civ. P. 11,
7   28 U.S.C. § 1927, and the Court's inherent sanction power, Defendants subsequently
8   withdrew its request for Rule 11 sanctions.  (Doc. 124 at 1.)

9   Specifically, Defendants' request for sanctions focuses on three main areas.  First,
10  Defendants focus on Plaintiffs' failures regarding proper identification of litigants in the
11  actions.  (Doc. 104 at 3.)  Defendants point out that these alleged failures raised issues not
12  only with identifying who was a party to the litigation but also its statutory responsibilities
13  under the PDA to respond to NOR letters issued pursuant to A.R.S. § 12-1363.  (Id.)  Next,
14  Defendants argue that Plaintiffs' missteps in Hoffman and Albano I, which were litigated
15  and dismissed in state court, expanded and delayed resolution of the litigation, as Plaintiffs
16  later filed Albano II and Albano III, which proceeded to judgment in this Court.  Finally,
17  Defendants focus on the early litigation history of Albano II and Albano III, which this Court
18  has throughly detailed at the outset of this Order.

19  Plaintiffs contest the alleged failures regarding not properly identifying who was a
20  party to the litigation and the allegation that they did not properly identify their clients on
21  the statutory NOR, but further contend that these issues did not multiply the proceedings and
22  thereby subject them to § 1927 sanctions.  Plaintiffs further argue that the events that
23  transpired in Hoffman and Albano I are irrelevant and not subject to sanctions.

24  The Court agrees with Plaintiffs' arguments regarding the first two issues. Regarding
25  the first issue, § 1927 sanctions evaluates unnecessary filings and tactics once a lawsuit has
26  already been initiated, not pre-litigation activity.  See Keegan Mgmt., 78 F.3d at 436.  On the
27  second issue, § 1927 limits a federal court's ability to sanction an attorney for conduct
28  undertaken before another court.  See Grid Systems Corp. v. John Fluke Mfg. Co., 41 F.3d

1318, 1319 (9th Cir. 1994).

Regarding the final issue, Plaintiffs argue that their counsel's actions were inadvertent and mistaken, but not taken in bad faith. (Doc. 117 at 8-10.) Plaintiffs argue that their counsel was operating under certain misunderstandings with the court record, but that their conduct does not warrant sanctions. (Id.)

Defendants disagree. Regarding the early litigation history of Albano II and Albano III, Defendants' reply highlights its main argument, as follows:

> When viewed in its whole, there is no question that Plaintiffs' counsel's actions were for an improper purpose of delay and frustration of resolution by the District Court and, thus, are sanctionable. This is not a case where there are discrete instances of sanctionable conduct. This case demonstrates a consistent pattern of misrepresentations intertwined with conduct performed for the improper purpose of delay. Given the number and repetition of the conduct, there can be no doubt it was intended to delay.

(Doc. 124 at 4.) Defendants go on to argue that Plaintiffs' repeated motions for remand were not only causing delay but were also an improper attempt to forum shop, as "they believed a Superior Court judge would be more favorable in applying tolling." (Id.)

The Court agrees with Defendants that counsel for Plaintiffs have engaged in sanctionable conduct. Regardless of whether recklessness alone suffices, see Fink, 239 F.3d at 993, or whether "[o]ur precedents plainly require more," Keegan Mgmt., 78 F.3d at 436, § 1927 sanctions are justified in this case because Plaintiffs' early litigation filings were in bad faith as they either intentionally or recklessly misrepresented the court record. In Albano II, Plaintiffs misrepresented that Judge Carroll had granted Defendants' summary judgment, and subsequently set that judgment aside. The Court detailed this conduct, as follows: "This misrepresentation of the record in Albano II has been a consistent theme throughout Plaintiffs' filings. (E.g., Albano II, Dkt. 39, Pls.' Resp. at 8:7-10; Albano II, Dkt. 40, Pls.' Statement of Facts (PSOF) ¶¶ 11, 18; Albano III, [Doc.] 13, Pls.' Mot. to Remand 3:1-4, 15-19.) Given the clarity of Judge Carroll's Order (['] A judgment has not been entered in this matter. The motion will be denied as moot.[']), the Court views these repeated misrepresentations as inexcusable." (Doc. 56 at 3, n.2.)

On top of these intentional or reckless misrepresentations of the court record, counsel

for Plaintiffs engaged in additional sanctionable conduct by unreasonably multiplying the proceedings by filing numerous motions to amend and motions to remand the proceedings to the state court. (See Doc. 56 at 3 (describing the unreasonable filings in the burgeoning Albano II docket) (see also Docs. 9, 18, 19, 23, 44, 47.) Thus, Plaintiffs filed five motions to remand and three motions to amend their complaint all within two weeks in Albano II. Given the tangle of all of these overlapping motions, the Court struck all of Plaintiffs' motions to amend, dismiss and remand and permitted Plaintiffs to file a single motion for the Court's review. (Doc. 44.) Based on this multiplication of the proceedings, the Court finds this conduct sanctionable; these motions were recklessly or intentionally filed as part of a persistent pattern of abusive litigation activity.

It is in this context that Defendants ask the Court to exercise its inherent authority to sanction counsel for Plaintiffs and enter a joint and several judgment against both counsel for Plaintiffs and Plaintiffs for the entire amount of Defendants' fees and expenses in this case, $171,177.50. In support, Defendants cite Chambers v. NASCO, Inc., U.S. 32, 33 (1991) for the proposition that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court may safely rely on its inherent power if, in its informed discretion, neither the statutes nor the rules are up to the task." (Doc. 124 at 3.) Defendants further rely on Fink, wherein the Ninth Circuit discussed Chambers and commented that "Chambers used 'bad faith' as a shorthand term to encompass a broad range of conduct in observing that a party may 'show[ ] bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" Fink, 239 F.3d at 992 (quoting Chambers, 501 U.S. at 46). (Id.)

Chambers is certainly a distinguishable case. Chambers involved a purchase agreement between Chambers, as seller, and NASCO, as buyer. The agreement provided for the sale of a television facility and broadcast license. Chambers sought to back out of the deal, and NASCO took legal action to enforce the contract. Ultimately, Chambers, the sole shareholder and director of the television facility, was sanctioned for $996,644.65 because the entire course of his conduct prior to and throughout the lawsuit evidenced bad faith and

an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the rules was intertwined with conduct such that only the court's inherent power could address and sanction Chambers appropriately, given the limitations of Rule 11 and the unavailability of § 1927 to sanction a party.

In this case, although counsel's conduct is sanctionable, it pales in comparison to Chambers' conduct and his repeated attempts to commit a fraud against the court. Further, in contrast to Chambers, monetary sanctions against counsel for Plaintiffs are available under § 1927; this is not a situation where the statute is not be up to the task of granting adequate sanctions. Additionally, the sanctionable conduct at issue in this case does not reach the entirety of the litigation as in Chambers, but only certain aspects of the litigation. Consequently, the Court's inherent power to sanction is not appropriately utilized in this case.

The Court finds that counsel's misrepresentations of the court record and counsel's unreasonably multiplying the proceedings in this case are sanctionable under 28 U.S.C. § 1927. "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." Id. Counsel's misrepresentations of the record in Albano II was a consistent theme throughout Plaintiffs' filings and these repeated misrepresentations were inexcusable. (See Doc. 56 at 3, n.2.) Both the misrepresentations and the multiplied pleadings constitute independent grounds upon which § 1927 sanctions are justified. However, under § 1927, compensation is limited to the additional expenditures incurred by opposing counsel as a result of the multiplicity of the proceedings. New Alaska Dev., 869 F.2d at 1306.

Therefore, prior to judgment being entered, the Court will require Defendants to provide the Court with a proposed calculation of the additional expenditures incurred by them due to the multiplicity of the proceedings caused by counsel for Plaintiffs as discussed in this Order. The Court will arrive at an appropriate compensation sanction that must be paid by counsel for Plaintiffs. Correspondingly, this compensation sanction will reduce the

amount of attorney's fees and expenses that Plaintiffs owe to Defendants.

## CONCLUSION

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED GRANTING** Defendants' renewed motion for attorney's fees and non-taxable expenses in the amount of $171,177.50. (Doc. 103.) This amount of fees and non-taxable expenses is subject to offset based on an amount of compensable sanctions that must by paid by counsel for Plaintiffs to Defendants, to be determined by a subsequent Order.

**IT IS FURTHER ORDERED** that within twenty (20) days of this Order, Defendants must submit to the Court a proposed calculation of the additional expenditures incurred by them due to the multiplicity of the proceedings caused by counsel for Plaintiffs as discussed in this Order. Plaintiffs may submit a response within ten (10) days; there need not be a reply.

**IT IS FURTHER ORDERED GRANTING** Defendants' Motion for Sanctions. (Doc. 104.) By subsequent Order, the Court will determine the appropriate compensation sanction that must be paid by counsel for Plaintiffs to Defendants.

DATED this 30th day of September, 2012.

*[signature]*

Stephen M. McNamee
Senior United States District Judge